# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RODERICK JOHNSON, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-18-78 |
| DENISE MORGAN, Warden, S. HARE, | * | |
| | * | |
| Defendants | | |

\*\*\*

## MEMORANDUM

Plaintiff Roderick Johnson, an inmate committed to the custody of the Maryland Department of Public Safety and Correctional Services and confined at all times relevant to Roxbury Correctional Institution (RCI),[1] filed this civil rights complaint concerning his claim that he was attacked by a group of inmates. ECF 1; ECF 5. Defendants move to dismiss the complaint or in the alternative for summary judgment in their favor. ECF 21. Plaintiff opposes the motion. ECF 24. In addition, plaintiff moves for default judgment, ECF 23, and for appointment of counsel, ECF 25; ECF 29. No hearing is necessary to resolve the matters pending before the court. *See* Local Rule 105.6. For the reasons stated below, defendants' motion, construed as one for summary judgment, shall be granted and plaintiff's motions shall be denied.

## Background

Plaintiff states that while he was incarcerated at RCI he was assigned to housing unit 2, D-tier, cell 30. On May 21, 2016, he awoke to three masked inmates in his cell stabbing him

---

[1] Following the events described in the complaint and amended complaint plaintiff was transferred to Eastern Correctional Institution where he is now confined.

multiple times.[2] He states he believes the assault took place around 10:00 a.m., which is when inmates leave the housing unit for lunch. He claims the assault took approximately 30 minutes and "somehow the cell door open [sic] up and the three mask [sic] inmates exited the cell." ECF 5 at p. 2.

After his assailants left, plaintiff's cellmate returned to the cell, observed plaintiff injured and bleeding, and began yelling for a correctional officer to come to the cell for assistance. Plaintiff was sent to an outside hospital where he was treated for multiple stab wounds to his face, behind his right ear, and his back. He states he received four stitches under his left eye and three behind his right ear. As a result of the attack, plaintiff claims he has nerve damage in his upper back. ECF 5 at pp. 2–3.

Plaintiff alleges that the assault occurred because the tier officer, defendant S. Hare, was not at his post at the time doors were opened for inmates to leave for lunch. He asserts that his assailants took advantage of Hare's absence to run into his cell and stab him. He further alleges that at any time there is mass movement on the housing unit, such as when inmates are exiting for a meal, an officer is supposed to be on the tier to secure the area. According to plaintiff, this was not done on the day he was assaulted. Plaintiff concludes that Hare's failure to properly discharge his duties violated his Eighth Amendment right to remain free from cruel and unusual punishment; with respect to defendant Warden Denise Morgan, plaintiff asserts that she is responsible for the entire institution and for the welfare of all inmates confined at RCI. ECF 5 at pp. 1, 3. As relief, he seeks $250,000 in compensatory damages from each defendant. ECF 5 at p. 3.

---

[2] The medical record memorializing plaintiff's initial examination indicates that there were 20 stab wounds identified, 16 of which were found in plaintiff's left cheek. ECF 21-2 at p. 8.

2

Defendants do not deny that plaintiff was assaulted as described, but state that there is no basis for plaintiff's claims against Morgan or Hare. ECF 21. In his declaration under oath, Hare states that on May 21, 2017, at approximately 10:00 a.m., he was posted as a "housing unit two 'D'-wing officer" and in that capacity assisted with movement of inmates from the housing unit for "feed-up." ECF 21-3 at ¶ 3. He explains that those duties consisted of "initially monitoring inmate movement from the left side of the tier, through the metal detector and to the dining hall." *Id.* After those inmates were moved out, the right side of the tier was opened and the process was repeated. Hare states that he was posted at the metal detector during the process of moving inmates out of the housing unit. When the inmates returned after their meal, both sides of the tier had the doors opened so that inmates could return to their cells. *Id.* As inmates returned to their cells, the doors to the cells were closed and Hare moved down the tier to count the inmates. *Id.* Hare states that as he approached plaintiff's cell, he saw plaintiff through the window standing in the middle of the cell with blood on his head and face. *Id.* Hare radioed the control area to open the cell door to plaintiff's cell and advised them of plaintiff's condition. *Id.* The officers in the control center then locked down the entire tier and Hare cuffed plaintiff and escorted him to the medical unit. *Id.*

In the aftermath of the assault on plaintiff, prison officials conducted an investigation and prepared a serious incident report. Lt. Mark Cutter is noted as the investigating Lieutenant for the serious incident report. ECF 21-2 at p. 4. Cutter interviewed plaintiff and stated in his report that the assault was plaintiff's "way out of the STG (BGF)"[3] and that plaintiff indicated "he was walking away from the organization and this was his price to pay." *Id.* at p. 5. Cutter notes that plaintiff "is a validated member of the STG (BGF)." *Id.* Plaintiff also told Cutter that "he was

---

[3] STG stands for "Security Threat Group," and BGF stands for "Black Guerilla Family," a gang at RCI. ECF 21-4 at p. 6.

3

asleep in his cell when he was jumped by 5 to 6 inmates." *Id.* Although officers went from cell to cell inspecting each inmate's hands and face for evidence that they had been in a physical altercation, no one was identified as a possible suspect in the assault. *Id.* Additionally, no weapons were recovered from the tier, nor did anyone admit that they had witnessed the assault. *Id.* Plaintiff's cellmate, Charles Green, was moved to administrative segregation after the assault because he was believed to be either a witness or a perpetrator of the assault. *Id.* at p. 11. Plaintiff did not provide a written statement for purposes of the investigation into his attack. *Id.* at p. 14.

In addition to the serious incident report, the assault was investigated by the Internal Investigations Division. ECF 21-4. Detective Mills was assigned to the case. *Id.* at p. 2. In his report, Mills indicated that Captain Ralph Bowman from RCI informed him that Hare was called over to plaintiff's cell where plaintiff was found with visible wounds to his face. *Id.* at p. 6. Mills printed information regarding plaintiff who he noted was a validated member of BGF. *Id.* Mills spoke with Cutter regarding his investigation and Cutter relayed what plaintiff had told him: that the assault was his way of getting out of the BGF. *Id.* Mills interviewed plaintiff at RCI in the medical room of housing unit 5 and plaintiff told Mills he had been sleeping in his cell when the doors opened and "some guys came in and started assaulting him." *Id.* Mills stated that when he asked if plaintiff had seen who his assailants were, he indicated that he had not. *Id.* When Mills asked plaintiff why he was assaulted, he reported that plaintiff told him he didn't want to talk about it and that he did not want to press charges on anyone. *Id.* Mills asked plaintiff if the incident was over or if there was going to be retaliation and plaintiff indicated that it was over. *Id.* Mills further indicated that plaintiff completed a withdrawal form because he did not want to press charges against anyone. *Id.* at p. 7. Mills concluded his investigation

noting there were no witnesses to the assault and that plaintiff was unwilling to cooperate with any further investigation. *Id.*; *see also id.* at p. 19 (signed withdrawal form)..

Plaintiff filed an administrative remedy procedure complaint (ARP) on June 3, 2016, complaining that some of his property was missing after an officer packed it up for plaintiff's move to administrative segregation after the assault. ECF 21-2 at pp. 23–31. The complaint was dismissed because plaintiff did not provide sufficient paperwork to prove he owned the items of property he claimed were missing. *Id.*

### Non-dispositive Motions

Plaintiff filed a motion for default judgment on May 29, 2018, indicating that more than 20 days had passed without a response to the complaint by defendants. ECF 23. At the time the motion was filed, defendants had filed their dispositive motion. In any event, defendants were initially given 60 days to file a response and filed timely motions for extensions of time which were granted. ECF 18; ECF 19. Defendants were not in default and the motion shall be denied.

Plaintiff also filed two motions to appoint counsel, citing his poverty and incarceration as burdens to his ability to litigate this case. ECF 25; ECF 29. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915

does not authorize compulsory appointment of counsel). Exceptional circumstances include a litigant who "is barely able to read or write," *Id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008) (internal citation omitted). Upon careful consideration of the motions and previous filings by plaintiff, the court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. No exceptional circumstances exist that warrant the appointment of an attorney to represent plaintiff under § 1915(e)(1); therefore, the pending motions shall be denied.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)) (internal quotation marks omitted).

## Analysis

### Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that plaintiff has failed to exhaust his administrative remedies with regard to his Eighth Amendment claim. If plaintiff's claim has not been properly presented through the administrative remedy procedure it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA provides in pertinent part that:"[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (internal citation omitted); *see Chase v. Peay*, 286 F. Supp. 2d 523, 527 (D. Md. 2003), *aff'd*, 98 F.App'x 253 (4th Cir. 2004). The PLRA's exhaustion requirement serves

several purposes, including "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007) (internal citations omitted); *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion requirement provides prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners "pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process." *Chase v. Peay*, 286 F. Supp. at 530 (citing *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process)); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief").

In this case, defendants assert that the only claim plaintiff has addressed through the administrative remedy process concerned his missing property. Plaintiff does not deny that he never raised his claim that defendant Hare failed to fulfill his duties and thereby created an environment in which plaintiff could be assaulted. ECF 24. The failure to raise the claim in an ARP thwarts the purpose for requiring the exhaustion of administrative remedies and denies defendants the opportunity to respond to the claim, investigate the circumstances surrounding the claim, and, if appropriate, resolve the complaint. The failure to exhaust administrative remedies requires dismissal without prejudice of the claim raised in the complaint. Furthermore, even if plaintiff had exhausted the claim administratively, the complaint still fails.

## Eighth Amendment Claim

In order to prevail on an Eighth Amendment claim of failure to protect from violence, plaintiff must establish that defendants exhibited "deliberate or callous indifference to a specific known risk" of harm. *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987) (internal citation omitted). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing" an inmate to be assaulted by another inmate "serves no legitimate penologicial objective, any more than it squares with evolving standards of decency: Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994) (citations omitted). Additionally,

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837; *see also Rich v. Bruce*, 129 F.3d 336, 339–40 (4th Cir. 1997).

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 832). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . reasonable measures to guarantee the safety of the inmates." *Id.* (internal citation and quotation marks omitted) "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (citing *Farmer*, 511 U.S. at 834). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability can be established. *Raynor*, 817 F.3d at 127.

9

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury." or excessive risk to the inmate's safety. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires the court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal citations and quotation marks omitted). Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id.* at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence'" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128.

Actual knowledge of a substantial risk does not alone impose liability. Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844. "In failure-to-protect cases, prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Raynor*, 817 F.3d at 128 (quoting *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995)) (internal quotation marks omitted); *see Thompson v. Virginia*, 878 F.3d 89, 108 (4th Cir. 2017) ("[P]rison officials are not liable if taking action would endanger their own lives or if the harm occurred despite their reasonable efforts to prevent it."). Failure to take action in an

ongoing assault, however, can amount to deliberate indifference. *See Cox v. Quinn*, 828 F.3d 227, 236–37 (4th Cir. 2016) (holding correctional officers were deliberately indifferent to prisoner's substantial risk of serious harm where correctional officers failed to take reasonable action after prisoner repeatedly informed them that he feared for his safety before he was beaten); *Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) (en banc) (finding no deliberate indifference where unarmed prison officials did not intervene in an armed attack immediately but called for backup).

To be clear, plaintiff sustained painful and serious injuries as a result of the assault committed against him. While defendants claim that plaintiff attributed the assault to his decision to renounce his allegiance to the BGF, plaintiff denies he was ever a member of the BGF and takes issue with the manner in which he was "confirmed" as a member of the group by correctional staff. ECF 24. That dispute of fact is not, however, material to the Eighth Amendment claim. Where, as here, there is no forewarning that plaintiff was in danger of being assaulted and an assault takes place because of simple inadvertence or negligence, such as the failure to see assailants entering his cell, an Eighth Amendment violation has not occurred. It is deliberate indifference to a known risk of harm that is prohibited by the Eighth Amendment. Further, plaintiff's claim that no meaningful investigation took place following his assault is belied by the verified records submitted by defendants and contradicts his signed withdrawal form stating he did not want charges pressed against anyone.

Defendants are entitled to summary judgment in their favor. A separate order follows.

11/13/18
Date

_CCB_
Catherine C. Blake
United States District Judge

11